IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JMO WIND DOWN, INC.,[1] | Case No. 16-10682 (BLS) |
| Debtor. | Hearing Date: July 25, 2016 at 10:00 a.m. (ET)<br>Obj. Deadline: June 9, 2016 at 4:00 p.m. (ET) |
| | Ref. Nos. 225, 226, 227, 233, 246 and 248 |

**REPLY OF ERNST & YOUNG LLP
TO THE EQUITY COMMITTEE'S OBJECTION
TO ITS FEE APPLICATION**

Ernst & Young LLP ("**EY**"), one of the professionals retained by the above-captioned debtor and debtor in possession (the "**Debtor**"), submits this reply to the (1) *Limited Objection of Official Committee of Equity Security Holders to Debtor's Professionals Interim Fee Applications* [D.I. 248] and; (2) *Limited Objection of Official Committee of Equity Security Holders to Debtor's Professionals' Second Monthly Fee Applications* [D.I. 272] (collectively, the "**Fee Objections**"), and respectfully states as follows:

**BACKGROUND**

1. On March 21, 2016 (the "**Petition Date**"), the Debtor commenced the above-captioned chapter 11 case (the "**Case**") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended or modified, the "**Bankruptcy Code**").

2. Also on March 21, 2016, the Debtor filed the *Motion of the Debtor for Interim and Final Orders Authorizing the Debtor to (A) Incur Postpetition Debt; (B) Provide Adequate*

---

[1] The last four digits of the Debtor's tax identification number are 6822. The Debtor's mailing address is 268 Lambert Avenue, Palo Alto, California 94306.

*Protection; (C) Use Cash Collateral; and (D) Grant Certain Liens and Provide Security and Other Relief to Prepetition Secured Parties* [D.I. 10] (the "**DIP Motion**").

3. On March 22, 2016, the Court granted the DIP Motion [D.I. 45] (the "**Interim DIP Order**") authorizing the Debtor to borrow certain amounts from Eduardo Saverin (the "**Postpetition Lender**," and together with the Prepetition Secured Parties (as defined in the DIP Motion), the "**Secured Parties**") and utilize cash collateral pursuant to an agreed budget attached to the Interim DIP Order as **Exhibit A** (the "**DIP Budget**").

4. As set forth in the Interim DIP Order, the Secured Parties agreed to "carve-out" from their collateral certain amounts to pay certain professionals for services rendered from the Petition Date through May 6, 2016 (the "**Carve-Out**"). Interim DIP Order, ¶ 13. The DIP Budget specifically allocates a carve-out of $330,000 for the payment of the Debtor's financial advisor's (that is, EY's) fees and expenses (the "**EY Carve-Out**"). *See* DIP Budget.

5. The Interim DIP Order provides that the Carve-Out is senior in priority to, among other things, the Secured Parties' liens and the rights of any successor trustee or estate representative in the Case or any subsequent chapter 7 proceeding if the Case is converted to a case under chapter 7 of the Bankruptcy Code. See Interim DIP Order, ¶¶ 10, 11 and 13.

6. On April 11, 2016, the Court entered an order approving the Debtor's retention of EY as its financial advisor [D.I. 111] *nunc pro tunc* to the Petition Date (the "**EY Retention Order**"). Pursuant to the terms of the EY Retention Order, a retainer held by EY (which is in the amount of $27,034) (the "**EY Retainer**") may be applied by EY to pay its fees and expenses

as they are approved by the Court. *See* EY Retention Order at 2; EY Retention Application ¶ 16.[2]

7.      On April 21, 2016, the Court entered the *Second Interim Order (I) Authorizing the Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing the Debtor's Limited Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection to Prepetition Secured Noteholders Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 ,and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* [D.I. 154] (the "**Second Interim DIP Order**").

8.      On April 29, 2016, the Court entered the *Third Interim Order (I) Authorizing the Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing the Debtor's Limited Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection to Prepetition Secured Noteholders Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364, and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 400* [D.I. 180] (the "**Third Interim DIP Order**," together with the Interim DIP Order and the Second Interim DIP Order, the "**Interim DIP Orders**").

9.      On May 26, 2016, EY filed the *First Monthly Application of Ernst & Young LLP, for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Financial Advisor for the Debtor and Debtor-In-Possession for the Period from March 21, 2016 through April 30, 2016* [D.I. 233] (the "**First EY Fee Application**").[3]  The First EY Fee Application

---

[2] "EY Retention Application" is defined herein as the *Application of the Debtor for Entry of an Order Authorizing the Employment and Retention of Ernst & Young LLP as Financial Advisor to the Debtor Nunc Pro Tunc to the Petition Date* [D.I. 50].

[3] The First EY Fee Application is incorporated herein by reference.

seeks fees in the amount of $324,325.00 (80% = $259,460.00) and expenses in the amount of $41,393.06 for the period March 21, 2016 through April 30, 2016.

10. On May 27, 2016, the Debtor filed the *Debtor's Motion to Convert this Case to Chapter 7 of the Bankruptcy Code* [D.I. 236] (the "**Motion to Convert**") seeking conversion of this Case to a case under Chapter 7. The Motion to Convert is scheduled to be heard on July 25, 2016.

11. On June 9, 2016, the Equity Committee filed the *Limited Objection of Official Committee of Equity Security Holders to Debtor's Professionals Interim Fee Applications* [D.I. 248] (the "**First Equity Committee Objection**") objecting to certain interim fee applications including the EY Fee Application.[4] The Equity Committee questions whether this Case is or will be administratively insolvent and states that, "as such, no professional fees should be paid at this time." *First Equity Committee Objection*, ¶ 1. The Equity Committee further asserts that EY and the Debtor's other professionals should not be allowed to obtain the protections of the Carve-Out because the Carve-Outs were contained in interim DIP orders. *First Equity Committee Objection*, ¶ 2.

---

[4] On June 9, 2016, the United States Trustee (the "**UST**") filed the *United States Trustee's Omnibus Limited Objection to the First Monthly Application of Landis Rath & Cobb, Counsel to the Debtor and Debtor-in-Possession, for Compensation and Reimbursement of Expenses Pursuant to 11 USC §§330 and 331 (D.E. 225); The First Monthly Application of Wilmer Cutler Pickering Hale and Dorr LLP for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Special Corporate Counsel to the Debtor and Debtor in Possession for the Period from March 21, 2016 through May 9, 2016 (D.E. 226); The First Monthly Application of Cooley LLP, Special Litigation Counsel to the Debtor and Debtor-in-Possession for Compensation and Reimbursement of Expenses for the Period of March 21, 2016 through April 30, 2016 (D.E. 227); First and Final Application of Sagent Advisors, LLC for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Investment Banker to the Debtor for the Period March 21, 2016 through May 9, 2016* (D.E. 228) [D.I. 246] (the "**UST Objection**"), specifically objecting to the fee applications of certain of the Debtor's professionals, but the UST did not specifically object to the First EY Fee Application. However, the UST Objection states that "no further award of professional fees should be made until it has been determined if the estate will be administratively insolvent." UST Objection, ¶ 10. The UST Objection asserts that such fees and expenses "will take priority over the expenses of the Chapter 11." See UST Objection, ¶ 10.

12. On June 20, 2016, EY filed the *Second Monthly Fee Application of Ernst & Young LLP for Compensation For Services Rendered and Reimbursement of Expenses Incurred As Financial Advisor for the Debtor and Debtor-in-Possession for the Period from May 1, 2016 through May 31, 2016* [D.I. 266] (the "**Second EY Fee Application**," together with the First EY Fee Application, the "**EY Fee Applications**").[5] The Second EY Fee Application seeks fees in the amount of $83,814.00 (80% = $67,051.20) and expenses in the amount of $7,185.98 for the period May 1, 2016 through May 31, 2016.

13. On July 11, 2016, the Equity Committee filed the *Limited Objection of Official Committee of Equity Security Holders to Debtor's Professionals' Second Monthly Fee Applications* [D.I. 272] (the "**Second Equity Committee Objection**") which incorporated by reference the First Equity Committee Objection to certain additional interim fee applications filed in the Case, including the Second EY Fee Application.

**REPLY**

14. The Fee Objections fail to take into account that the Secured Parties consented to the Carve-Out when they offered, and the Court approved, DIP Financing. The Equity Committee has no basis to object to the *Secured Creditors'* agreement to the Carve-Out. EY relied on the EY Carve-Out and the EY Retainer. The Carve-Out and the Retainer must first be used to satisfy the Professionals' fees and expenses (in accordance with the DIP Budget and as approved by the Court) before such funds may be used for any other purpose. EY's fees and expenses - subject to the DIP Budget and the EY Carve-Out - are senior to Chapter 7 fees and expenses and should be paid. Accordingly, EY's fees and expenses can be paid from the EY

---

[5] The Second EY Fee Application is incorporated herein by reference.

Carve-Out and the EY Retainer at this time (to the extent of Court approval of those fees and expenses), up to a total of $357,024, whether or not the estate is administratively insolvent.[6]

15. EY Fee Applications should be approved as EY's fees and expenses are fair, reasonable and compensable under Bankruptcy Code section 330. As such, the Fee Objections should be overruled and EY should be permitted to apply the EY Retainer and be paid from the EY Carve-Out.

16. Any contention that EY did not provide actual and necessary services to the Debtor or that the amount of the fees and expenses so incurred are not reasonable is contradicted by the EY Fee Applications themselves. Specifically, the detailed EY Fee Applications demonstrate that the services provided to the estate by EY were actual and necessary and that such fees and expenses are reasonable. The EY Fee Applications provided, among other things, (i) descriptions of the services rendered sufficient to determine that the services were actual and necessary for the administration of the estate, (ii) time records broken down in tenth (.10) of an hour increments enabling reviewers to see the amount of time spent on each service and the reasonableness thereof, (iii) the rates charged by each professional and their level of experience, and (iv) a detailed breakdown of all expenses, and therefore complied with the requirements of § 330(a).

17. Bankruptcy Code section 330(a)(1) provides for "(A) reasonable compensation for actual, necessary services rendered by … [a] professional person … and (B) reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1).

---

[6] EY hereby expressly reserves the right to seek payment of all of its reasonable fees and expenses incurred in providing services to the Debtor in this case pursuant to the EY Retention Order either (A) to the extent that (1) there are additional funds available for the payment of the Debtor's professionals' fees and expenses in the DIP Budget; and/or (2) EY's fees and expenses constitute Post-Carve-Out Trigger Date Expenses (as that term is defined in the Interim DIP Order); or (B) to the extent that the Debtor's estate is not administratively insolvent.

18. In determining the amount of reasonable compensation, Bankruptcy Code section 330(a)(3) states that:

> the Court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).

19. Bankruptcy Code section 330(a) "provides a two-tiered test for determining whether and in what amount to compensate bankruptcy professionals." *In re PJ Fin. Co.*, 2012 Bankr. LEXIS 5404, *12-13 (Bankr. D. Del. Nov. 20, 2012) (quoting *In re Uni-Marts*, 2010 Bankr. LEXIS 1049, at *2 (Bankr. D. Del. Mar. 31, 2010)). The Court must first determine that the services provided were actual and necessary and then assess the fee request for reasonableness. *Id.* at *13. The party opposing an award of fees "must carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances." *Id.* (quoting *In re Blackwood Assocs.*, 165 B.R. 108, 112 (Bankr. E.D.N.Y. 1994)). Absent such evidence from the opposing party, the opposition fails. *Blackwood Assocs.*, 165 B.R. at 112.

20. Here, the Fee Objections do not contend or explain what in the EY Fee Applications is unreasonable or what would be reasonable under the circumstances. In fact, the Equity Committee has not even asserted that the services provided were not actual or necessary or that the fees and expenses are unreasonable. As such, the Fee Objections must fail.

21. Thus, because EY has satisfied its burden under Bankruptcy Code section 330(a) and the Fee Objections not even attempt to rebut the showing made by EY in the EY Fee Applications, and the EY Fee Applications should be approved and the amounts requested thereunder paid.

WHEREFORE, EY respectfully requests that this Court (i) overrule the Fee Objections (and the UST Objection, if it is intended to be applicable to the EY Fee Applications); (ii) approve the fees and expenses requested by EY in the EY Fee Applications; (iii) direct that the fees and expenses sought in the EY Fee Applications immediately be paid from, and to the extent of, the EY Retainer and from the EY Carve-Out; and (iv) grant such other and further relief as is just and proper.

Respectfully submitted this 21st day of July, 2016.

ALSTON & BIRD LLP

/s/ John Weiss
John Weiss (No. 4160)
90 Park Avenue
New York, NY 10016
Telephone (212) 210-9400
Fax (212) 922-3860
john.weiss@alston.com

/s/ John C. Weitnauer
John C. Weitnauer (*pro hac vice* pending)
1201 W. Peachtree Street, N.W.
Atlanta, GA 30309
Telephone (404) 881-7780
Fax (404) 253-8298
kit.weitnauer@alston.com

*Counsel to Ernst & Young LLP*